701 P.2d 1293

Gary LOVE, et ux, et al,
Plaintiffs-Respondents,[1]

v.

**BOARD OF COUNTY COMMISSION-
ERS OF BINGHAM COUNTY,**
Idaho, Defendant-Appellant.

No. 15488.

Supreme Court of Idaho.

May 10, 1985.

Colin W. Luke, Blackfoot, for defendant-appellant.

---

1. For a complete listing of plaintiffs-respon-    dents, see 105 Idaho 558, 671 P.2d 471 (1983).

R.M. Whittier, Pocatello, for plaintiffs-respondents.

PER CURIAM.

In March of 1981, Mr. and Mrs. Warren W. Haven and Noranda Mining, Inc. jointly filed a formal application for reclassification of property owned by the Havens from the then "A" agricultural classification to the "M" manufacturing classification as defined in Chapter 1 of the Bingham County Zoning Ordinance.

Subsequent to that application and after all required notices were given, a public hearing was held before the Bingham County Planning and Zoning Commission, following which the Zoning Commission recommended to the Bingham County Commissioners that the proposed zone change be granted. After giving all proper notices, the Bingham County Commissioners held a public hearing on the proposed zone change and thereafter granted it by Ordinance No. 81-1. The plaintiffs-respondents, Love, et al, who had protested the change, appealed to the district court. Following an appellate review, the district court issued a Memorandum Decision which reversed the County Commissioners, ruling as a matter of law that the rezoning was not in accordance with Bingham County's comprehensive land-use plan and that the findings of the Board of County Commissioners were inadequate. Further details are available in *Love v. Board of County Commissioners of Bingham County,* 105 Idaho 558, 671 P.2d 471 (1983) (*Love I*), where this Court affirmed the district court on an appeal taken by Bingham County.

Impliedly, we directed that the district court remand to the County Commission for the making of written findings in support of its conclusions. Thereafter, the Board of County Commissioners made and file extensive additional findings [2] with the district court, and contemporaneously re-

enacted the County's prior Ordinance No. 81-1. Love, et al, filed objections in district court, one of which contended that the additional findings were in direct violation of the Comprehensive Planning and Zoning Act. In a short Memorandum Decision and Order, the district court again reversed the decision of the Commission adopting Ordinance No. 81-1, stating the reasons for so doing: "The court has reviewed the record, and still holds the opinion rendered heretofore that the zoning amendment is not in accordance with the comprehensive plan, is invalid under the law and cannot stand." This was in conformance with the district court's statement of its earlier view prior to the first appeal to this court: "This court clearly stated its decision that the proposed change was not in conformance with the comprehensive plan and only an amendment of the comprehensive plan could support the proposed zone change." From the district court's reversal the Bingham County Commissioners have again appealed to this Court.

I.

In *Love I,* this Court agreed with the district court that the findings of fact and conclusions of law adopted by the Bingham County Commissioners were inadequate. Said a unanimous Court in part:

The findings of the Commissioners contained the following conclusory language that "[t]he proposed change in zone classification is in accordance with the intent and policy of the Comprehensive Plan of Bingham County, State of Idaho." This is not a finding of fact, but rather a conclusion of law which if erroneous may be corrected on judicial review.

From our review of (1) the Bingham County Comprehensive Plan, (2) the findings of fact of the Commissioners regarding the petition for zone reclassification, and (3) the ordinance amendment, we agree with the district court that as a

**2.** See the appendix to this opinion for a recital   of these findings.

matter of law the findings of fact are insufficient to support the conclusion that the amendment was in accordance with the comprehensive plan. *The district court's decision reversing the decision of the Commission was appropriate because of the Commission's failure to make written findings in support of its conclusions.*

Love I, *supra,* at 559–60, 671 P.2d at 472–73 (footnote omitted) (emphasis added).

Nowhere in the opinion, however, did we intimate any agreement with the district court's conclusion that, based upon its search of the record, the zoning amendment in issue was not in accordance with the county's comprehensive plan. In fact, in footnote 2 to the opinion we stated:

Our holding does not preclude further proceedings which could result in a valid rezoning of the Havens' property. To be valid the rezoning decision must be supported by adequate findings of fact to support a conclusion that the zoning amendment was in accordance with the plan.

*Id.,* at 560, n. 2, 671 P.2d at 473, n. 2. Since the Board of County Commissioners' findings of fact and conclusions of law were inadequate, we were unable to determine upon the record whether the decision to grant the rezone request was or was not *in accordance* with the County's comprehensive plan. Accordingly, that issue was not addressed by us at that time.

In both proceedings before the district court, we note that it was in the unenviable position of applying the "in accordance with" language of I.C. § 67–6511 without the benefit of a statutory or judicial interpretation of the language at issue. Subsequently, in *Bone v. City of Lewiston,* 107 Idaho 844, 693 P.2d 1046 (1984), we supplied that interpretation. The holdings in *Bone* are dispositive, answering the issues here presented.

## II.

■ In *Bone* a unanimous Court decided two issues. First, that "in accordance" does not mean that a zoning ordinance must be exactly as the Comprehensive Plan shows it to be. Rather, the question of whether a zoning ordinance is "in accordance" with the Comprehensive Plan is a question of fact. Thus, a governing body charged to zone "in accordance" with its comprehensive plan pursuant to I.C. § 67–6511 must make a factual inquiry to determine whether the requested zoning ordinance or amendment reflects the goals of, and takes into account those factors in, the comprehensive plan in light of the later present factual circumstances surrounding the request. *Bone, supra,* at 849–51, 693 P.2d at 1051–53.

■ The Court's second holding in *Bone* was that a district court's review of a governing body's zoning decision is governed by I.C. § 67–5215(b) through (g). Thus, a district court may only reverse a zoning decision if one of six grounds set forth in § 67–5215(g) is found to exist: the decision is (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by error of law; (5) clearly erroneous in view of the evidence in the record; or (6) arbitrary, capricious, or characterized by abuse of discretion. *Id.,* at 847–49, 693 P.2d at 1049–51.

■ In light of *Bone,* of which the district court did not have the benefit, it is readily apparent that we must reverse its decision. First, its interpretation of "in accordance" was far too strict wherein it ruled as a matter of law that the Bingham County Commissioners could not approve the rezone request in this case where the rezone apparently would not be in exact conformance with the County's Comprehensive Plan.

■ Second, the district court's review was beyond the scope of review limited by I.C. § 67–5215(b-g). Whether a zoning ordinance is "in accordance" with the compre-

hensive plan is a *factual question,* which can only be overturned where the fact found is *clearly erroneous.* Here, the court below did not so find, but rather ruled that "the zoning amendment is not in accordance with the comprehensive plan. [Therefore,] it is invalid under the law and cannot stand."

In the interests of judicial economy, we have carefully reviewed the evidence (which included 200 pages of testimony) which the Board of County Commissioners had before it when making its findings of fact, and conclude that the findings are adequately supported by substantial and competent evidence. The findings and conclusions of the Board support its decision.[3] Accordingly, we direct the district court to enter judgment upholding the validity of Bingham County Ordinance No. 81-1.

Reversed and remanded with directions. Costs to appellant. No attorney's fees.

### APPENDIX

ADDITIONAL FINDINGS OF BOARD OF COMMISSIONERS OF BINGHAM COUNTY, IDAHO REGARDING THE PETITION FOR ZONE RECLASSIFICATION MADE BY W.W. HAVENS AND NORANDA MINING, INC.

THE BOARD OF COUNTY COMMISSIONERS, OF BINGHAM COUNTY, STATE OF IDAHO, AFTER DUE DELIBERATION AND CONSIDERATION, HEREBY FINDS AS FOLLOWS:

1. The provisions of Chapter 3, Section I of the Bingham County Ordinance 80-1 (the Bingham County Zoning Ordinance) and Title 67, Chapter 65, of the Idaho Code have been complied with, to-wit:

(a) All due and legal petitions have been made,

(b) All due and legal notices have been given, and

(c) All due and legal hearings have been held.

2. After the holding of a public hearing in accordance with legal requirements the Planning and Zoning Board of Bingham County, Idaho, has recommended the granting of the Petition for a zone change on the real property described on Exhibit "A", attached hereto and incorporated herein by reference, from "A" Agricultural Zone, as described in Chapter 1, Section VI, of said Bingham County Zoning Ordinance, to "M" Manufacturing Zone, as described in Chapter 1, Section IX of said Bingham County Zoning Ordinance.

3. In a public hearing held in accordance with legal requirements on May 13, 1981, before the Board of County Commissioners, an opportunity was given to interested parties to express their views concerning the petitioned zoning change. All Commissioners were present at said public hearing.

4. That the following are goals of the Bingham County Comprehensive Plan.

(a) To promote and encourage economic growth;

(b) To encourage the location of industrial development on marginal agricultural ground;

(c) That an adequate amount of suitable land should be zoned for light and heavy industry to insure new and expanding industries will develop in areas suitable for that use;

(d) Industries and other facilities should be encouraged to locate away from congested metropolitan areas;

(e) Consistent with human environmental values, sufficient economic growth should be promoted to provide full employment for present residents of the area and former residents who wish to return.

5. The Comprehensive Plan is a policy document intended to be used as a guide. It should be followed as closely as reason, justice and its own general character make practical and possible.

---

**3.** We particularly direct attention to findings of fact numbered 4 through 18. See appendix.

6. The Comprehensive Plan is not a precise plan and does not show nor intend to show the exact outline of use districts. It shows, rather, the general location, character and extent of such land use patterns.

7. That Bingham County has many unemployed residents who could benefit from the rezoning because of the potential job opportunities that would be provided.

8. That for every job created by such an industry, a potential of two or three more jobs would be created by service and related type occupations thereby reducing the unemployment of Bingham County and promoting the county's economic growth.

9. That said rezoning with the accompanying industrial development would result in an increase in the tax base of the county which would benefit the county as well as the Snake River School District.

10. That the capital outlay required for such an industry as well as its yearly operating budget would promote and benefit the economy of the county.

11. That there is an inadequate amount of suitable zoned for industry and that said rezoning is necessary to encourage industrial expansion in the county.

12. That the rezoning of the land in question involves marginal agricultural ground because of the many outcropings of rocks and the shallow topsoil.

13. That there exists suitable and adequate rail and road transportation as well as electrical power near the proposed site.

14. That the rezoning and the accompanying industry would not adversely affect electrical power availability to other residents and uses in the county.

15. That the Groveland Road would handle most of the traffic created by any new industry on the rezoned side and that said road is capable of handling the anticipated traffic adequately.

16. That cobalt is important to the Government of the United States in that it is a strategic metal to the United States.

17. The operation of the proposed plant is basically environmentally safe in that:

(a) There will be no discharge of water off the property;

(b) The tailings produced are not hazardous;

(c) There will be no significant air pollution;

(d) There will be no significant problem with the arsenic produced in that the arsenic produced is the most insoluble form and there will be no problems with it leaching into the soil;

(e) The site can be adequately reclaimed.

18. That the information supplied by the petitioners concerning the environmentally safe operation of the plant was supported by independent sources retained by the Board of County Commissioners.

BASED UPON THE FOREGOING FINDINGS, the Board of County Commissioners of Bingham County, State of Idaho, conclude that the proposed zone classification is justified and in the general welfare of the County; and, further, that it is in accordance with the intent and policy of the Comprehensive Plan and that there is good and compelling cause to adopt the Ordinance....