**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3430-23

LONNI MILLER RYAN,

     Petitioner-Appellant,

v.

LOCAL FINANCE BOARD,

     Respondent-Respondent.

_____

Argued October 7, 2025 – Decided October 24, 2025

Before Judges Perez Friscia and Vinci.

On appeal from the New Jersey Department of Community Affairs, Local Finance Board.

Brandon D. Minde argued the cause for appellant (Dughi, Hewit & Domalewski, attorneys; Brandon D. Minde, of counsel and on the briefs; Rachel Bauer, on the briefs).

Brian D. Ragunan, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Brian D. Ragunan, on the brief).

PER CURIAM

Petitioner Lonni Miller Ryan appeals from a June 6, 2024 final agency decision of the Commissioner of the New Jersey Department of Community Affairs, Local Finance Board (Board) finding she violated two sections of the Local Government Ethics Law (LGEL), N.J.S.A. 40A:9-22.5(c) and (d). We reverse.

The relevant facts are not disputed. In 2010, petitioner was appointed as a councilperson in the Township of Wayne (Township). She was subsequently elected to that office and served as a councilperson until December 31, 2017.

At a regular meeting of the council on January 18, 2012, petitioner voted in favor of a resolution authorizing the "[m]ayor and Township [c]lerk . . . to enter into an [a]greement with Dorsey & Semrau [(Dorsey)] . . . regarding representation of the Township in pending tax appeals." The Board unanimously adopted the resolution. Petitioner did not have any role in the selection of Dorsey other than voting on the resolution.

On September 14, 2012, petitioner and her husband filed a tax appeal in the New Jersey Tax Court contending the value of their home in the Township had been unreasonably assessed. Before doing so, petitioner sought the advice of counsel who advised her there were no legal restrictions that prevented a sitting councilperson from filing a tax appeal. Petitioner's appeal was not

2

reached by the Tax Court in 2012, and it was refiled annually in 2013, 2014, 2015, 2016, and 2017 without an assessment determination.

Petitioner voted annually from 2013 to 2016 in favor of resolutions substantially identical to the January 18, 2012 resolution. On every occasion, the council voted unanimously to adopt the resolutions.

In 2017, petitioner announced her candidacy for mayor of the Township and her intent to challenge the incumbent mayor in the June 6, 2017 primary election. Petitioner's tax appeals were used by her adversary as an issue in the election. At a council meeting on May 17, 2017, the Township attorney advised the council that it is general practice for a tax attorney from another municipality to handle a tax appeal if there is a perceived conflict, and that is what would happen in the case of petitioner's tax appeal. Petitioner lost the primary election.

On July 25, 2017, "a concerned citizen" of the Township filed a complaint with the Board alleging petitioner violated the LGEL by voting in favor of the resolutions authorizing the hiring of Dorsey while her tax appeals were pending. Petitioner contends the complaint was filed by a "a political insider, . . . close [advisor,] and major campaign contributor to" the incumbent mayor, and it was "one of many strategic attacks against [her]" by the complainant "on behalf of the [mayor's] campaign."

Petitioner's tax appeals were never reached by the Tax Court. In May 2018, petitioner withdrew her tax appeals, and on June 28, 2018, they were dismissed.

On September 12, 2018, the Board notified petitioner a complaint was filed against her and, after "a preliminary investigation[,]" the Board "determined that there [was] a reason to investigate for potential violations of N.J.S.A. 40A:9-22.5(c) and (d)." On November 9, 2018, petitioner, through counsel, responded to the Board's notice. More than four years later, on December 6, 2022, the Board issued a notice of violation in which it "concluded that voting at the December 18, 2013, December 17, 2014, December 16, 2015, and December 21, 2016 . . . [c]ouncil [m]eetings for [Dorsey] . . . while she had an on-going tax appeal" violated N.J.S.A. 40A:9-22.5(c) and (d). The Board assessed a fine of $100 per violation for a total of $200.

Petitioner requested an administrative hearing, and the matter was transferred to the Office of Administrative Law. The case was assigned to an Administrative Law Judge (ALJ) and the parties filed cross-motions for summary disposition. See N.J.A.C. 1:1-12.5.

On February 28, 2024, the ALJ issued her initial decision. The ALJ found:

> During the course of [petitioner's] service on the [T]ownship council, petitioner and her husband had tax

appeals pending. There is absolutely no dispute that they had every right to file and pursue these. Nevertheless, during the same years, petitioner voted on the appointment of tax counsel to the municipality who would appear in opposition to those appeals; the latter knowing that petitioner served on the council and voted on their appointments.

Based on the New Jersey Supreme Court's interpretation of N.J.S.A. 40A:9-22.5(d), the facts of this case establish that the statute was violated due to petitioner's "indirect pecuniary interests" or "direct personal interest" in the matter that might reasonably be expected to impair her objectivity, independence of judgment, or allow the tax attorney to become familiar with her and her position in the local government. It is this potential to curry favor or appearance of conflict which forms the heart of the allegations here. All of these voting actions took place prior to and unrelated to the future mayoral dispute in 2017, notwithstanding that they apparently became a primary campaign issue.

Based on those findings, the ALJ found "petitioner's actions violated N.J.S.A. 40A:9-22.5 (c)[] and (d)" and she affirmed the $200 fine imposed by the Board. Petitioner filed written exceptions to the ALJ's initial decision. Among other reasons, petitioner argued the ALJ's initial decision failed to address the alleged violation of N.J.S.A. 40:A:9-22.5(c) and she did not include any findings of fact or conclusions of law relative to that allegation. In response, the Board "request[ed] the Commissioner accept the ALJ's [initial decision] entirely and add further reasoning regarding [petitioner's] violation of

subsection (c)." The Board argued "[w]ith the addition of further reasoning the ALJ properly concluded that [petitioner] violated LGEL subsection (c)."

On June 6, 2024, the Board issued its final decision. The Board acknowledged receiving petitioner's exceptions and the Board's response. The Board adopted the ALJ's initial decision, but modified "[t]he first sentence of page one . . . striking out the word 'alleged[]' and inserting instead the word 'found.'" This appeal followed.

On appeal, petitioner argues: (1) the Board's finding of a violation of N.J.S.A. 40A:9-22.5(c) must be vacated because the finding was not based on credible evidence in the record; and (2) the Board's finding of a violation of N.J.S.A. 40A:9-22.5(d) must be vacated because the finding was not based on credible evidence in the record and was contrary to law.

"An agency's quasi-judicial decision is not disturbed on appellate review 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" US Masters Residential Prop. (USA) Fund v. N.J. Dep't of Env't Prot.-Fin. Servs., 239 N.J. 145, 160 (2019) (quoting Allstars Auto Grp, Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018)). In determining whether an agency's decision is arbitrary, capricious, or unreasonable, we examine: "(1) whether the agency's decision conforms with

6

relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion." Twp. Pharmacy v. Div. of Med. Assistance & Health Servs., 432 N.J. Super. 273, 283-84 (App. Div. 2013).

"'The burden of demonstrating that the agency's action was arbitrary, capricious[,] or unreasonable rests upon the [party] challenging the administrative action.'" E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 349 (App. Div. 2010) (alteration in original) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)). "In undertaking this review, deference is given to the special competence and expertise of an administrative agency, such as the [Board], with regard to technical matters with which that agency is concerned." Abraham v. Twp. of Teaneck Ethics Bd., 349 N.J. Super. 374, 379 (App. Div. 2002) (citing N.J. Bell Tel. Co. v. State Dep't of Pub. Utils., Bd. of Pub. Util. Comm'rs, 162 N.J. Super. 60, 77 (App. Div. 1978)).

"Deference to an agency decision is particularly appropriate where interpretation of the [a]gency's own regulation is in issue." I.L. v. N.J. Dep't of Hum. Servs., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364

(App. Div. 2006). "Nevertheless, we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" C.L. v. Div. of Med. Assistance & Health Servs., 473 N.J. Super. 591, 598 (App. Div. 2022) (quoting R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014)).

The LGEL was enacted in 1991 "to codify a set of guidelines designed to limit actions by local officials that might create doubt in the minds of citizens concerning the motivations of those officials." Wyzykowski v. Rizas, 132 N.J. 509, 536 (1993). N.J.S.A. 40A:9-22.5(c) provides "[n]o local government officer or employee shall use or attempt to use his official position to secure unwarranted privileges or advantages for himself or others." A public official or employee violates subsection (c) when they "[use] or [attempt] to use [their] official position with the intent to secure unwarranted advantages or privileges for [themselves] or another." Mondsini v. Loc. Fin. Bd., 458 N.J. Super. 290, 305 (App. Div. 2019). "[T]he mere public perception of impropriety does not violate subsection (c); a violation requires proof that the public official intended to use his or her office for a specific purpose." Ibid.

In addition to intent, a violation of subsection (c) requires that the official use or attempt to use their position to secure an "unwarranted privilege[] or

8

advantage[]." N.J.S.A. 40A:9-22.5(c). A privilege is "unwarranted" when it is "unjustified or unauthorized, one that would permit the municipal official to obtain something otherwise not available to the public at large." In re Zisa, 385 N.J. Super. 188, 196 (App. Div. 2006).

N.J.S.A. 40A:9-22.5(d) provides:

> No local government officer or employee shall act in his official capacity in any matter where he, a member of his immediate family, or a business organization in which he has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence of judgment.

In Piscitelli v. City of Garfield Zoning Bd. of Adjustment, 237 N.J. 333, 351 (2019) our Supreme Court held: "[w]e must construe N.J.S.A 40A:9-22.5(d) to further the Legislature's expressed intent that '[w]henever the public perceives a conflict between the private interests and the public duties of a government officer,' 'the public's confidence in the integrity' of that officer is 'imperiled.'" Ibid. "A conflicting interest arises when the public official has an interest not shared in common with the other members of the public." Meyer v. MW Red Bank, LLC, 401 N.J. Super. 482, 491 (App. Div. 2008) (quoting Wyzykowski, 132 N.J. at 524).

Our Supreme Court identified four categories of interest that may give rise to a disqualifying conflict under N.J.S.A. 40A:9-22.5(d). They are:

> (1) "Direct pecuniary interests," when an official votes on a matter benefitting the official's own property or affording a direct financial gain;
>
> (2) "Indirect pecuniary interests," where an official votes on a matter that financially benefits one closely tied to the official, such as an employer, or family member;
>
> (3) "Direct personal interest," when an official votes on a matter that benefits a blood relative or close friend in a non-financial way, but in a matter of great importance . . . ; and
>
> (4) "Indirect [p]ersonal [i]nterest," when an official votes on a matter in which an individual's judgment may be affected because of membership in some organization and a desire to help that organization further its policies.
>
> [Grabowsky v. Twp. of Montclair, 221 N.J. 536, 553 (2015).]

Unlike subsection (c) which requires intent, subsection (d) is violated "'[i]f there is "interest," . . . without regard to actual motive, as the purpose of the rule is prophylactic[.]'" Id. at 554 (quoting McNamara v. Borough of Saddle River, 64 N.J. Super. 426, 429 (App. Div. 1960)).

We are convinced the Board's determination that petitioner violated N.J.S.A. 40A:9-22.5(c) must be reversed. The ALJ's initial decision does not

10

address that alleged violation and is devoid of any supporting conclusions of law or findings of fact. Instead, after addressing the alleged violation of N.J.S.A. 40A:9-22.5(d), the ALJ nakedly concluded "petitioner's actions violated 40A:9-22.5(c)." A violation of subsection (c), however, requires a finding that the public official or employee "[used] or [attempted] to use [their] official position with the intent to secure unwarranted advantages or privileges for [themselves] or another." Mondsini, 458 N.J. Super. at 305. The ALJ did not make any such finding.

Apparently recognizing this material deficiency in the ALJ's initial decision, the Board advised the Commissioner that "[w]ith the addition of further reasoning the ALJ properly concluded that [petitioner] violated LGEL subsection (c)," and asked the Commissioner to rehabilitate the initial decision by "add[ing] further reasoning regarding [petitioner's] violation of subsection (c)." The Commissioner declined the Board's request and issued the final agency decision adopting the ALJ's initial decision without any substantive modifications.

Because the Board's finding that petitioner violated N.J.S.A. 40A:9-22.5(c) was not supported by adequate findings of fact or conclusions of law, we conclude it was arbitrary, capricious, and unreasonable. Accordingly, we

reverse and vacate the Board's finding petitioner violated N.J.S.A. 40A:9-22.5(c).

We are also persuaded the Board's finding that petitioner violated N.J.S.A. 40A:9-22.5(d) must be reversed. The ALJ determined petitioner violated subsection (d) because she had an "indirect pecuniary interest" and a "direct personal interest" in the council's adoptions of the resolutions.

As counsel for the Board conceded at oral argument before us, the ALJ's finding that petitioner had a disqualifying "direct personal interest" is insupportable. A direct personal interest exists "when an official votes on a matter that benefits a blood relative or close friend in a non-financial way." Grabowsky, 221 N.J. at 553 (emphasis added).

The gravamen of the allegations against petitioner was she had a financial interest in her tax appeal, not that she had a non-financial interest in the hiring of the Township's tax counsel. As counsel for the Board further conceded at oral argument, the ALJ's initial decision is bereft of any findings of fact or conclusions of law that could support her conclusion that petitioner had a "direct personal interest" under the facts of this case. Therefore, the Board's determination petitioner violated N.J.S.A. 40A:9-22.5(d) based on a "direct personal interest" cannot stand because it lacks fair support in the record and the

12

Board clearly erred in reaching its conclusion. Twp. Pharmacy, 432 N.J. Super. at 283-84.

That leaves the determination petitioner had an "indirect pecuniary interest" as the sole remaining basis for the Board's decision. An "indirect pecuniary interest[]" may be found "where an official votes on a matter that financially benefits one closely tied to the official, such as an employer, or family member." Grabowsky, 221 N.J. at 553. In this case, such a finding could only be based on petitioner's husband's alleged financial interest in the adoption of the resolutions. We are unconvinced.

The ALJ found petitioner's "indirect pecuniary interest" in "the matter . . . might reasonably be expected to impair her objectivity[] [and] independence of judgment." The ALJ also found voting on the resolutions would "allow the tax attorney to become familiar with her and her position" and have the "potential to curry favor."

Importantly, a violation of N.J.S.A. 40A:9-22.5(d) must involve an interest "that might reasonably be expected to impair [the official's] objectivity or independence of judgment." The determination "'whether a particular interest is sufficient to disqualify is necessarily a factual one and depends upon the

A-3430-23

circumstances of the particular case.'" Grabowsky, 221 N.J. at 554 (quoting Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258, 268 (1958)).

The question is "whether the circumstances could reasonably be interpreted to show that they had the likely capacity to tempt the official to depart from [their] sworn public duty." Van Itallie, 28 N.J. at 268. The law does not mandate disqualification based on "every possible interest, no matter how remote and speculative" or "nebulous." Id. at 269. The purported indirect benefit to the official must be sufficiently connected with the official's action such that there is a realistic opportunity for "contradictory desires tugging the official in opposite directions." La Rue v. East Brunswick Tp., 68 N.J. Super. 435, 448 (App. Div. 1961).

Here, the ALJ's conclusion that petitioner had a disqualifying "indirect personal interest" was based on the type of remote, speculative, and nebulous interest our Supreme Court cautioned against in Van Itallie. We can easily dispense with the ALJ's concern that voting on the resolutions "allow[ed] the tax attorney to become familiar with [petitioner] and her position." Not only was petitioner's elected position a matter of public knowledge, but she also voted on at least one resolution relating to the hiring of Dorsey in 2012 before her first tax appeal was filed. The ALJ's supposition that Dorsey "bec[a]me familiar"

with petitioner and her role as councilperson because she voted on the resolutions was not supported by, and was contradicted by, the substantial credible evidence in the record.

We are also persuaded that the alleged indirect financial interest of petitioner's husband was far too remote and attenuated to create a disqualifying conflict of interest. To begin with, petitioner did not have any role in the selection of Dorsey as tax counsel to the Township. Her only involvement was to vote perfunctorily in line with the entire council on the annual resolutions authorizing the mayor or Township clerk to hire Dorsey. In addition, the council voted unanimously each year to authorize the hiring of Dorsey. As a result, there is no basis to conclude petitioner believed she had any ability to influence the outcome of the council's decisions on the resolutions.

Furthermore, the suggestion that petitioner's husband could have obtained some financial benefit from the hiring of Dorsey is not supported by the record. For one thing, the tax appeals would have been heard and decided by a Tax Court judge, not by Dorsey. More importantly, as the Township attorney advised the council, Dorsey would not have been involved in petitioner's tax appeal because it was general practice for a tax attorney from another municipality to handle a tax appeal in the event of a perceived conflict.

A-3430-23

We are satisfied the circumstances of this case cannot reasonably be interpreted to have "had the likely capacity to tempt [petitioner] to depart from [her] sworn public duty." Van Itallie, 28 N.J. at 268. Petitioner's husband's purported financial interest in the matter was simply too speculative, remote, and nebulous to support the Board's finding of a disqualifying conflict. It did not involve an interest "that might reasonably be expected to impair [the official's] objectivity or independence of judgment" as required by N.J.S.A. 40A:9-22.5(d). We reverse the Board's finding of a disqualifying conflict under N.J.S.A. 40A:9-22.5(d), because it was arbitrary, capricious, and unreasonable.

The Board's June 6, 2024 final agency decision is reversed and vacated. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division